UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

VANLINER INSURANCE COMPANY, et al.,

        Plaintiffs,

v.                                                          Case No.  5:11-cv-122-Oc-10TBS

ABF FREIGHT SYSTEM, INC., et al.,

        Defendants.
_____

## ORDER

Pending before the Court are the parties' cross motions for sanctions.  (Docs. 31, 40).   On December 15, 2011, Defendant/Cross-Claimant, Maverick Transportation, Inc. and Cross-Claimant Great West Casualty Company (collectively "Maverick") moved for spoliation sanctions against Defendant/Cross-Claim Defendant ABF Freight System, Inc. ("ABF") due to ABF's alleged "failure to download and/or save the Electronic Control Module ("ECM") data prior to its destruction[.]"  (Doc. 31 at 2).  On January 13, 2012, ABF moved for sanctions against Maverick for filing a so-called "frivolous and baseless Motion for Sanctions."  (Doc. 40 at 2). Upon due consideration, the Court DENIES both motions.

### I. Background

On February 2, 2011,[1] Vanliner Insurance Company, United Van Lines, LLC, East End Transfer and Storage, Inc., and John Newson ("Plaintiffs") filed an action in state court against ABF, Maverick, Willie L. Perry, and Richard Dye for negligence

---

[1]The Complaint is dated January 26, 2011 (Doc. 2 at 7), however, the document was deemed "filed" in the state court on February 2, 2011 (Id. at 1).

arising out of an automobile accident that occurred on February 18, 2009 involving a disabled ABF tractor.  (Doc. 2). The case was removed to federal court on March 9, 2011.  (Doc.1).  Relevant to this order is Maverick's Answer to the Complaint and asserted cross-claim and affirmative defenses, which are based on, inter alia, ABF's alleged failure to properly maintain its vehicle.  (Doc. 3 at 4-11). ABF subsequently initiated a cross-claim against Maverick for running into its stopped vehicle.  (Doc. 6 at 9-12).  This case is set for the trial term commencing April 30, 2012.  (Doc. 52).

## II. Discussion

"Spoliation is the intentional destruction, mutilation, alteration, or concealment of evidence." Swofford v. Eslinger, 671 F. Supp. 2d 1274, 1279 (M.D. Fla. 2009) (internal quotations omitted).  "Sanctions may be imposed against a litigant who is on notice that documents and information in its possession are relevant to litigation or potential litigation . . . and destroys such documents and information." Optowave Co. v. Nitikin, No. 6:05-cv-1083-Orl-22DAB, 2006 U.S. Dist. LEXIS 81345, at *22 (M.D. Fla. Nov. 7, 2006) (internal citation omitted).  "Spoliation sanctions 'are intended to prevent unfair prejudice to litigants and to insure the integrity of the discovery process.'" United States v. Lanzon, 639 F.3d 1293, 1302 (11th Cir. 2011) (quoting Flury v. Daimler Chrysler Corp., 427 F.3d 939, 944 (11th Cir. 2005)).  In the Eleventh Circuit, spoliation sanctions may include "(1) dismissal of the case; (2) exclusion of expert testimony; or (3) a jury instruction on spoliation of evidence which raises a presumption against the spoliator." Flury, 427 F.3d at 945.

To establish spoliation, the moving party must prove that (1) the missing or destroyed evidence actually existed at one point in time, (2) the alleged spoliator had a

2

duty to preserve the evidence, and (3) the "evidence was crucial to the movant being able to prove its prima facie case or defense." Walter v. Carnival Corp., No. 09-20962-CIV-HOEVELER/GARBER, 2010 U.S. Dist. LEXIS 74307, at *5 (S.D. Fla. July 22, 2010). Case law in this Circuit has established that even if all three elements are met, the failure to preserve evidence rises to the level of spoliation worthy of sanctions only where the alleged spoliator's actions were a result of bad faith. Lanzon, 639 F.3d at 1302.[2] In the absence of direct evidence, bad faith can be shown by circumstantial evidence. Walter, 2010 U.S. Dist. LEXIS 74307, at *5-6. Circumstantial evidence includes:

> (1) [a showing that] evidence once existed that could fairly be supposed to have been material to the proof or defense of a claim at issue in the case; (2) the spoliating party engaged in an affirmative act causing the evidence to be lost; (3) the spoliating party did so while it knew or should have known of its duty to preserve the evidence; and (4) the affirmative act causing the loss cannot be credibly explained

---

[2] Historically, the Eleventh Circuit's decisions in Bashir v. Amtrak, 119 F.3d 929 (11th Cir. 1997) and Flury, 427 F.3d 939 created a dispute in this Circuit concerning whether bad faith is an essential requirement of a district court's spoliation analysis. Despite this early confusion, the Eleventh Circuit, and district courts within its jurisdiction have proclaimed the indispensability of the bad faith element. Lanzon, 639 F.3d at 1302 ("An 'adverse inference instruction' is proper in civil cases where a party has failed to preserve evidence and there is a showing of bad faith in doing so.") (citing Bashir, 119 F.3d at 931); see Cox v. Target Corp., 351 F. App'x 381, 383 (11th Cir. 2009) ("A jury instruction on spoliation of evidence is required 'only when the absence of that evidence is predicated on bad faith.'") (internal citation omitted); see also Denim N. Am. Holdings, LLC v. Swift Textiles LLC, et al., No. 4:10-cv-45 (CDL), 2011 U.S. Dist. LEXIS 114259, at *5 (M.D. Ga. Oct. 4, 2011) ("In Bashir v. Amtrak, the Eleventh Circuit unequivocally stated: 'In this Circuit an adverse [spoliation] inference is drawn from a party's failure to preserve evidence *only* when the absence of that evidence is predicated on bad faith.'") (emphasis in original); Watkins v. KFC U.S. Props., No. 1:09-cv-1007-JEC, 2011 U.S. Dist. LEXIS 98181, at *6 (M.D. Ga. Aug. 31, 2011) ("Notwithstanding Flury's listing of bad faith as one of several factors, it is important to note that both Eleventh Circuit and district court opinions within the circuit have emphasized the requirement that a party seeking sanctions demonstrate the existence of bad faith by the party that [allegedly] destroyed the evidence[.]"); Woodward v. Wal-Mart Stores East, LP, 801 F. Supp. 2d 1363, 1372 (M.D. Ga. 2011) (The court "decline[d] to read Flury as having removed the bad faith requirement. Under Bashir, an adverse inference can only be drawn 'when the absence of . . . evidence is predicated on bad faith.'") (internal citation omitted).

> as not involving bad faith by the reason proffered by the spoliator.

Id. (citing Calixto v. Watson Bowman Acme Corp., No. 07-60077-CIV-ZLOCH/ROSENBAUM, 2009 U.S. Dist. LEXIS 111659, at *44-45 (S.D. Fla. Nov. 16, 2009)).

Here, upon due consideration, the Court finds that Maverick has failed to demonstrate that the allegedly spoliated evidence was crucial to its case or defense, which is an essential element of the spoliation claim. As such, a negative inference jury instruction at trial would be inappropriate.

In its motion, Maverick asks this Court to sanction ABF for the latter's destruction of evidence in this case. Maverick represents that less than one-week after the accident occurred, its retained accident reconstruction expert, David Brill "requested access to the ABF tractor so that he could personally download" the data from the tractor's ECM. (Doc. 31 at 3). According to Maverick,

> An [ECM] is analogous to a micropresser on a computer. The engine's data is stored and provides crucial and essential information relevant to the use, maintenance and parameters of the vehicle. Extraction of this information is widely used in the trucking industry to better understand specific details of a truck's engine, especially in the context of maintenance as well as an accident.

(Id.). Maverick represents that although ABF advised Mr. Brill that it would extract the data and provide him with a complete copy, it failed to do so. (Id. at 3-4). Maverick argues that ABF failed to produce (a) the ECM's time and date data and (b) "the data consisting of the diagnostic fault codes or the 'audit trail.'" (Id. at 4). According to Maverick, "[t]he thrust of [its] claims and defenses [is] that as a national commercial carrier ABF failed in [its] responsibility to properly maintain and upkeep [its] vehicles."

4

(Id. at 3). Maverick argues that the ECM maintenance data is "relevant, essential and necessary to explain the causes of ABF's vehicle break down and potential negligence in vehicle maintenance" and without it, the company "is unable to effectively defend [its] case or make [its] prima face [sic] case of negligence against ABF." (Id. at 4); see also Transcript of Hearing ("Tr.") at 5 ("Maverick needs to contend that ABF did not properly maintain [its] engine which caused it to download. But the information to do that no longer exists . . . [W]ithout the ECM data [Maverick] can't fully explain the negligence to jury[.]").

In response, ABF maintains that it hired an independent company (Florida Detroit Diesel-Allison of Ocala, Florida) to download the tractor's ECM and that any failure to provide complete information was partly due to Florida Detroit Diesel's use of a software version that did not automatically save the relevant information. (Doc. 34 at 3-4). ABF maintains that it provided to Maverick all of the information Florida Detroit Diesel downloaded from the tractor's ECM. (Id. at 6). At the hearing held before the undersigned on February 6, 2012, ABF's attorney, Edward Nicklaus argued that the data Florida Detroit Diesel downloaded from the ECM contained accident-related information, which ABF secured immediately after the accident, in good faith. Tr. at 18. Mr. Nicklaus explained that this data included information on "the speed of the tractor/trailer, the rotation of RPMs of the engine, everything else that you need to determine how fast the truck was going at the time of the accident." Id. at 17-18.

Mr. Nicklaus advised the court that at the time of the download, ABF did not anticipate a lawsuit for the negligent maintenance of the tractor, so it did not "download any maintenance materials whatsoever." Id. at 18-19. A review of the record reveals

5

that there is no evidence that ABF had been put on notice of Maverick's negligent maintenance claim (or could reasonably foresee the allegation) at the time the accident data was downloaded. See Optowave, 2006 U.S. Dist. LEXIS 81345, at *21 ("Sanctions may be imposed against a litigant who is on notice that documents and information in its possession are relevant to litigation or potential litigation . . . and destroys such documents and information.").

As Mr. Nicklaus argued–and the evidence of record demonstrates–the maintenance record for the tractor was produced during discovery. (Doc. 34 at 4-5, 11, 26, 29, 36, 39); see also Tr. at 19, 21-22. Thus, any notion that the ECM data is the only source for the ABF tractor's maintenance records is belied by the record. Whether the ECM data contained information that was not already in the maintenance report is speculative. There is some evidence in this record that the maintenance information is still accessible (Brill Depo., Doc. 31-1 at 24-25), however, neither party has provided the Court with an analysis/interpretation of its contents.

### III. Conclusion

Upon consideration of the foregoing, the Court finds that Maverick has not met its burden of proving that the information on the ECM at issue here was "crucial to [its] being able to prove its prima facie case or defense." Walter, 2010 U.S. Dist. LEXIS 74307, at *5. Additionally, the fact that Maverick delayed the filing of its motion until the eve of trial further suggests to the Court that it has been able to adequately prepare itself for trial and ready its defense and cross-claim without the allegedly "crucial" ECM data. Maverick's motion is **DENIED**. The Court will not allow a negative inference jury

instruction at trial.  Since Maverick has failed to establish this basic element of spoliation, the Court need not examine whether ABF acted with bad faith.

Lastly, as the Court has given due consideration to the merits of Maverick's motion, ABF's motion for sanctions against Maverick for filing a so-called "frivolous and baseless Motion for Sanctions" is **DENIED**.

IT IS SO ORDERED.

DONE AND ORDERED in Ocala, Florida, on March 8, 2012.

THOMAS B. SMITH
United States Magistrate Judge

Copies to all Counsel